In re The CAMPFIRE SHOP, INC., Debtor.

Anthony BARONE, Trustee, Plaintiff,

v.

STROUSE, GREENBERG MORTGAGE CO., INC., Strouse, Greenberg & Co., Strouse, Greenberg Financial Corporation and Administrator of the Small Business Administration and The Penn Mutual Life Insurance Company and Anna M. Ashworth, Paul Ronge and Nancy M. Ronge, as executors of the Estate of George E. Ashworth and Commonwealth of Pennsylvania, Department of Revenue, Personal Income Tax Bureau and David and Lynn Woolfenden and Brittain Signs, Inc. and Commonwealth of Pennsylvania, Department of Labor and Industry and George Becker Associates, Inc. and Commonwealth of Pennsylvania, Department of Revenue, Bureau of Accounts Settlement and United States of America, Treasury Department, Internal Revenue Service and Tax Claim Bureau of Bucks County, Pa. and William L. Leigh, Tax Collector, Bucks County, Pa. and Joseph W. McGinnis, Sr. and Joseph W. McGinnis, Sr., Inc. and Ray Leicht and Congress Abstract Corporation and First American Title Insurance Company and Russell Glass Company, Defendants.

Bankruptcy No. 82–01969K.
Adv. No. 85–0530K.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 16, 1987.

Donald M. Collins, Philadelphia, Pa., for trustee.

David Kraut, Plymouth Meeting, Pa., for Congress Abstract Corp. and First American Title Insurance Co.

Paul R. Beckert, Jr., Bensalem, Pa., for Ray Leicht.

Michael Temin, Philadelphia, Pa., for Strouse, Greenberg.

William H.R. Casey, Doylestown, Pa., for Bucks County Tax Claim Bureau.

Anthony Barone, Philadelphia, Pa., Trustee/Plaintiff.

Virginia Powel, Ass't. U.S. Atty., Philadelphia, Pa., for Small Business Admin.

Robert K. Coulter, U.S. Dept. of Justice/Tax Div., Washington, D.C., for Internal Revenue Service.

John Brady, Langhorne, Pa., for Joseph W. McGinnis, Sr.

Joseph H. Masiuk, Barbara Lyons, Warrington, Pa., for George Becker Associates, Inc.

Nicholas Mancini, Fairless Hills, Pa., for debtor.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The procedural issues before the Court in this case are relatively simple ones concerning interpretation of Rules of Practice and Procedure in Bankruptcy (hereinafter referred to as "Bankr.R.") 9023, 9014, and 7052, and the corresponding Federal Rules of Civil Procedure (hereinafter referred to as "F.R.Civ.P.") 59 and 52(a). However, because they are issues which recur in matters in our Court, we are drafting an Opinion rather than simply entering an Order setting forth our conclusions. We decide that Bankr.R. 9023 and F.R. Civ.P. 59 must be interpreted strictly, and Motions must be *served* upon opposing counsel within ten (10) days of the Order in question, or they must be summarily denied because of our absence of jurisdiction to consider them. We also decide that the press of our duties to decide a large volume of matters requires us to interpret Bankr.R. 9014 and 7052 and F.R.Civ.P. 52(a) narrowly, and allow us broad discretion in deciding whether it is necessary to issue any findings of fact and/or conclusions of law in deciding motions which come before us.

The decision of these questions arises in the disposition of a Motion of Plaintiff, Trustee for Reconsideration, Under Rule 7052(b) [sic] to Make Findings of Fact and Under Rule 9023 to Alter or Amend Judgment which was filed on May 23, 1986. The entire text of the Order of which "alteration or amendment" was sought is as follows:

AND NOW, this 13th day of May, 1986, it is hereby ORDERED and DECREED that Summary Judgment is entered in favor of defendants First American Title Insurance Company and Congress Abstract Corporation.

Trustee's Motion for Partial Summary Judgment is denied.

/s/ William A. King, Jr.

The underlying bankruptcy case was filed under Chapter 11 of Title 11, U.S. Code, on April 30, 1982. In April, 1983, the Debtor, having ceased doing business, filed a Petition with this Court for permission to sell its principal asset, its former-business realty situated at 8333 Route 13, Levittown, Bucks County, Pennsylvania. On June 1, 1983, this Court granted the Petition, and the property was able to be sold free and clear, subject to distribution to the lienholders. Settlement, however, was not conducted until April 27, 1984. Unfortunately, distribution of the sale proceeds was effected in a manner inconsistent with the Order of June 1, 1983.

On December 10, 1984, the Debtor converted its bankruptcy to a case under Chapter 7. On December 11, 1984, Anthony

Barone, the Plaintiff in this matter, was named as Trustee. On June 19, 1985, this adversarial proceeding was filed, naming as Defendants all parties who should have received distribution, all parties who erroneously did receive distribution, and Congress Abstract Corporation (hereinafer referred to as "Congress") and First American Title Insurance Company (hereinafter referred to as "First American"), who had been, respectively, the title agent at settlement and the title insurance underwriter, who were alleged to have been responsible for the errors made in distribution.

On September 12, 1985, the Trustee moved for partial summary judgment on the issue of his entitlement to compensatory damages of $108,407.66, the sum which was erroneously distributed, against Congress and First American. On October 14, 1985, Congress and First American answered this Motion and, in addition, filed a Cross-Motion for Summary Judgment of their own. These matters were resolved by Judge King in the Order of May 13, 1986, quoted *supra.*

The Trustee filed the instant Motion on May 23, 1986. The substance of the Motion was a request for the Court "to make findings of fact herein and alter the judgment" by denying the Motion of Congress and First American.

Congress and First American made two (2) responses to the Motion: (1) They were not served with it until June 4, 1986, and hence it was untimely, per Bankr.R. 9023 and F.R.Civ. 59(e); (2) It lacked substantive merit, because F.R.Civ.P. 52(a), made pertinent to bankruptcy proceedings per Bankr.R. 7052, specifically provides that "[f]indings of fact and conclusions of law are unnecessary on decisions under Rules 12 *or 56* or any other motion except as provided in Rule 41(b)." (emphasis added). We conclude that the Trustee's Motion must be denied, because both of the arguments of Congress and First American are clearly correct.

F.R.Civ.P. 59(e) provides that "[a] Motion to alter or amend the Judgment shall be *served* not later than ten (10) days after entry of the Judgment." (emphasis added).

The Trustee argues that, per our local Motion Practice Rules, set forth in Local Rule 9014.1, service was not necessary until after the Court signed and remitted to it an Order Requiring Answer, per Local Rules 9014.1(b)(2) and (d)(2). Here, the Order Requiring Answer was not signed by former Chief Judge Emil F. Goldhaber of this Court until June 2, 1986. Thus, argues the Trustee, he was following local Court Rules and a Court Order in not serving Congress and First American until June 4, 1986.

■ We cannot accept this reasoning. While it is true that the Order Requiring Answer must be signed by the Court and served upon the Respondent to bring a Motion to issue per the above Local Rules, it does *not* follow that a moving party must wait until receipt of the Order Requiring Answer to serve his opponent with the Motion itself. We would, moreover, note that Bankr.R. 9013, which our local rules are empowered to supplement, but not contradict, requires that "[e]very written motion shall be served by the moving party on the trustee or debtor in possession and on those persons specified by these rules." We believe that this rule could be read to require immediate service of Motions upon opposing interested parties, and we believe this to be the better practice uniformly. The service required by Local Rule 9014.1(d) would then be read as requiring *supplemental* service of the Motion and accompanying papers after execution of the Order Requiring Answer by the Court, not the *exclusive* manner of service.

Unfortunately for the Trustee, the date of *service* of a Motion pursuant to Bankr.R. 9023 and F.R.Civ.P. 59(e) is crucial. In the context of interpreting the specific directives of Bankr.R. 9023 and F.R.Civ.P. 59(e), we must apply the time strictures of those rules as opposed to the more general rules applicable to all motions in our Court set forth in Local Rule 9014.1.

It is well-established that "[t]he ten-day period [set forth in F.R.Civ.P. 59(e)] is jurisdictional, and 'cannot be extended in the discretion of the district court.' *Gribble v. Harris,* 625 F.2d 1173, 1174 (5th

Cir.1980) (per curiam); Fed.R.Civ.P. 6(b); *see Davidson v. Dixon*, 386 F.Supp. 482, 492 (D.Del.1974), *aff'd mem.*, 529 F.2d 511 (3d Cir.1975)." *de la Fuente v. Central Electric Cooperative, Inc.*, 703 F.2d 63, 65 (3d Cir.1983).

Moreover, it is equally well-established by local Court of Appeals precedent that the date of *service* is determinative in ascertaining whether a Rule 59(e) motion is timely, irrespective of the date of *filing*. In *John E. Smith's Sons & Co. v. Lattimer Foundry & Machine Co.*, 239 F.2d 815 (3d Cir.1956), a judgment was rendered in favor of the plaintiff on June 1, 1954. The defendant filed a Rule 59 motion on June 5, 1954, but did not serve the motion upon counsel for the plaintiff until June 16, 1954. *Id.* at 816. The Court of Appeals affirmed a striking of the motion as untimely. *Id.* at 817. *See also Kruse v. Zenith Radio Corp.*, 82 F.R.D. 66, 68–69 (W.D.Pa.1979); and *Mroz v. Dravo Corp.*, 293 F.Supp. 499, 507 (W.D.Pa.1968).

We do note that, in one other instance, we granted a party relief despite its having filed an untimely Motion pursuant to Bankr.R. 9023 and F.R.Civ.P. 59. *In re Daulerio*, 71 B.R. 112, 114 (1987). However, we did so only because the error in question was a "clerical mistake" within the scope of Bankr.R. 9024 and F.R.Civ.P. 60(a), and hence one that we could correct on our own initiative at any time, even if no Motion at all had been pending.

■ We believe that there is a significant distinction between a Motion per Bankr.R. 9023 and F.R.Civ.P. 59, and one pursuant to Bankr.R. 9024 and F.R.Civ.P. 60. A Rule 60 Motion is not available to correct a "judicial errors." *See* 7 J. MOORE, FEDERAL PRACTICE, ¶ 60.-22[3], at 60–185 to 60–186 (2d ed. 1986). In a case where we receive a timely Rule 59 Motion, we will, in most instances, give plenary review to all aspects of the Order to which the Motion is directed, without the movant's need of alleging anything but any sort of error on our part, including a judicial error. *But cf. In re National Paragon Corp.*, 68 B.R. 337, 343 (Bankr.E.D.Pa. 1986) (Rule 59 motions pertinent to fee

awards not favored; these matters are not presented to the Court in an adversarial context). To succeed on a Rule 60(b) Motion, the movant has to make a strong showing that the motion fits into one of the six (6) special circumstances of Rule 60(b) as well as alleging an error on the merits.

Therefore, we observe that there is no basis for considering an untimely Rule 59 Motion as a Rule 60 Motion. *See* J. MOORE, *supra*, at 60–187 to 60–188. Where we have considered the merits of an untimely Rule 59 Motion, it was due to the applicability of another Rule, such as Rule 60(a) in *Daulerio* and, as in *In re Owens*, 67 B.R. 418, 422–23 (Bankr.E.D.Pa.1986), where Bankr. Rule 3008 expressly provided that the 10–day deadline of Rule 59(e) did not apply in the case of a motion to reconsider an order disallowing a claim.

However, because it raises another issue deserving our attention, we are further moved to address the substance of the Motion before us and indicate why the Motion is also lacking in merit. The reason for which the Trustee sought reconsideration of the Order of May 13, 1986, was that Judge King erred in failing to file an Opinion or make findings of fact accompanying his Order of May 13, 1986. Although we agree that, by the terms of Bankr.R. 9014 and 7052, F.R.Civ.P. 52(a) applies to the decision-making process in reference to the cross-motions for summary judgment before the Court, we also reiterate that, by its terms, Rule 52(a) provides that "[f]indings of fact and conclusions of law *are unnecessary* on decisions of motions *under Rules 12 or 56 or any other motion* except as provided in Rule 41(b)." (emphasis added).

We believe that the correct interpretation of these rules, taken together, is that it is totally within the discretion of bankruptcy judges as to whether they wish to make any specific findings of fact and/or conclusions of law, or wish to issue any directive except an order unaccompanied by any explanation whatsoever, in deciding any Motion except a Motion for involuntary dismissal, per Bankr.R. 7041 and F.R.Civ.P. 41(b). *Cf. In re Woerner*, 66 B.R. 964, 971

(Bankr.E.D.Pa.1986); and *In re Schiliro*, 64 B.R. 422, 424 (Bankr.E.D.Pa.1986). (Findings of fact are necessary in rendering a disposition on a Rule 41(b) Motion).

■ Given the vast quantity of motions, a good number of which are to some degree contested, which come before bankruptcy judges for disposition daily, invocation of the caveat of the last sentence of F.R.Civ.P. 52(a) serves what we believe to be the salutary purpose of preserving the sanity of bankruptcy judges. We therefore underscore that nothing in the federal rules requires us to make any specific findings of fact or conclusions of law on any motions before us except those pursuant to F.R.Civ.P. 41(b). We further note that this rule clearly applies to the various petitions and applications which come before us for disposition, a large quantity of which are fee applications. We assume that the district court, being aware of the language of F.R.Civ.P. 52(a) and the enormous quantity of matters before us for disposition, will remand matters appealed to that court to us to make detailed findings of fact only where it is necessary to assist the district court in reviewing our dispositions.

The instant Motion presents the most elementary of interpretations of F.R.Civ.P. 52(a). That rule expressly states that findings of fact are not necessary in deciding a Rule 56 motion, which was before Judge King, among other Motions. Clearly, Judge King properly could, and did, exercise his discretion not to make findings of fact in rendering a decision here. Although we lack jurisdictional power to do so due to the untimely nature of the Trustee's Motion, we therefore further hold that we would have no inclination to reconsider his Order in any event.

Our discussion of the issue of our duties pursuant to Bankr.R. 9014 and 7052 and F.R.Civ. 52(a) clearly establishes that the preparation of *this* Opinion was an exercise of discretion. However, we chose to write to clarify our position on the procedural rules in issue and to hopefully save our labors as well as those of counsel who might pursue similarly hopeless motions in the future.

We also must observe that the pendency of the Trustee's Motion and indeed this entire adversarial proceeding would have escaped our notice entirely had it not been for the dispatch of the letter of February 19, 1987, to us by Counsel for Congress and First American indicating that his clients were anxious to have the Motion resolved. We would point out that, given the enormous number of cases assigned to us (approximately 4,000 main cases, many of which contain numerous adversarial proceedings), there is no way that we can locate matters which our predecessors had under advisement unless these are brought to our attention. We urge the bar to do so.

We further note that this adversarial proceeding has been languishing in the system for almost two (2) years. Therefore, in our accompanying Order, we not only deny the Trustee's Motion, but we order the parties to appear before us for a status conference in order that we can stimulate its ultimate disposition.