In the Matter of PLAZA FAMILY PARTNERSHIP, a California General Partnership,

The TRAVELERS INSURANCE COMPANY, Appellant,

v.

PLAZA FAMILY PARTNERSHIP, Appellee.

No. CV–F–88–396 REC.

United States District Court, E.D. California.

Jan. 13, 1989.

David Ray Jenkins, Fullerton, Lang, Richert & Patch, Fresno, Cal., for appellant Travelers Ins. Co.

Whitney Rimel, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for appellee Plaza Family Partnership.

## ORDER AND DECISION RE APPEAL OF BANKRUPTCY COURT'S ORDER AUTHORIZING USE OF CASH COLLATERAL

COYLE, District Judge.

On December 19, 1988 the court heard an appeal filed by Travelers Insurance Company, a secured creditor, contesting an order enter by Judge Hedrick the U.S. Bankruptcy Court, Eastern District of California, Modesto Division, which authorized Plaza Family Partnership, a partnership in chapter 11 proceedings, to use cash collateral of the bankrupt estate for the purpose of paying the tax obligations of its individual partners. Upon due consideration of the arguments of the parties and the record, the court reverses the bankruptcy court's order for the reasons herein and remands for further proceedings consistent with this decision.

The debtor-partnership filed for Chapter 11 protection on December 15, 1986. The primary asset of the partnership consists of 1,056 acres of farmland. The property is subject to a claimed security interest in favor of the Appellant, Travelers Insurance Company. Travelers claims it has first priority deed of trust in the rents and profits

of the property and has filed proofs of claim with the bankruptcy court in the amount of $1,133,905.

Plaza Family Partnership maintained the estate as a debtor-in-possession during 1987 pursuant to 11 U.S.C. sections 1107–1108. During the year the partnership had approximately $395,000 of income as a result of leasing the property and the sale of beans on the property.

By an ex parte application filed on April 7, 1988 the debtor-partnership obtained an order shortening time to allow its motion to use cash collateral to be heard on April 14, 1988. The partnership stated the reason for the order shortening time was that an emergency existed, the deadline for filing individual tax returns. The individual family members had a tax liability of approximately $96,000 due on April 15, 1988.

The debtor-partnership in its motion to use cash collateral submitted the declaration of Dave Dunshee, an appraiser, and his report that the property was valued at $2,320,000 in May 1987. Also submitted was the declaration of Maria Stokman, the accountant that prepared the taxes of individual partners, which stated that the combined Federal and State tax liability on account of income resulting from leases of the estate property and from bean sales for 1987 is approximately $96,000. Traveler's does not dispute the fact that the individual partners suffered tax consequences as a result of leasing of estate property or the amount of tax liability incurred. The third declaration in support of the motion was submitted by Tony Plaza on behalf of himself and all the partners. The declaration stated that the partners were unable to pay the income tax.

Bankruptcy court Judge Hedrick granted the partnership's motion for authority to use cash collateral for the purpose of paying the income taxes of the individual partners. The court ruled from the bench that the motion was granted. The court issued a written order on April 27, 1988 that stated the motion was granted but did not make any findings of fact or conclusions of law. Travelers did not request a stay of the order pending appeal and the debtor-

partnership did in fact use the requested cash collateral for this purpose.

The following issues are presented on appeal:

1. Whether the appeal is moot because the appellant failed to obtain a stay of the order pending appeal;

2. Whether the bankruptcy court properly heard the motion to use cash collateral on shortened time;

3. Whether the bankruptcy court properly authorized the use of cash collateral for the purpose of paying the tax liability of its individual partners.

The standard of review applied to a bankruptcy court's findings of fact and law is set forth by Rule of Bankruptcy Procedure No. 8013. That rule states findings of fact, whether based on oral or documentary evidence, will not be set aside unless clearly erroneous and an appellate court should give due regard to the opportunity of the bankruptcy court to judge the credibility of witnesses. Conclusions of law, however, are subject to de novo review. *In re Mellor*, 734 F.2d 1396, 1399 (9th Cir.1984).

Travelers contends that because no findings of fact were made by the bankruptcy court and it did not articulate the facts on which the decision was based, issues of fact are reviewable de novo and no deference need be given to the trial court on these issues.

Federal Rule of Civil Procedure 52(a) provides that findings of fact are unnecessary on decisions of motions under Rule 12 or 56 or any other motion except as provided in Rule 41(d). Bankruptcy Procedure Rule 7052 expressly states that Rule 52 applies in adversarial proceedings before bankruptcy judges. One court has stated a bankruptcy court is not required to set forth findings of fact in an order on a motion for authorization to use cash collateral. *In re Indus. Valley Refrig. & Air Cond. Supplies*, 77 B.R. 15, 18 (Bkrtcy.E.D.Pa.1987).

The policies and reasons for not requiring bankruptcy courts to make findings of fact on motions was stated in *In re Camp-*

*fire Shop, Inc.*, 71 B.R. 521 (Bktrcy.E.D. Pa.1987):

> [I]t is totally within the discretion of bankruptcy judges as to whether they wish to make any specific findings of fact and/or conclusions of law, or wish to issue any directive except an order unaccompanied by any explanation whatsoever, in deciding any Motion except a Motion for involuntary dismissal.
>
> Given the vast quantity of motions, a good number of which are to some degree contested, which come before bankruptcy court for disposition daily, invocation of the caveat of the last sentence of Rule 52(a) serves what we believe to be the salutary purpose of preserving the sanity of bankruptcy court judges. We therefore underscore that nothing in the federal rules requires us to make any specific findings of fact and/or conclusions on any motion before us except those pursuant to F.R.Civ.P. 41(b). We further note that this rule clearly applied to the various petitions and applications which come before us for disposition, a large quantity of which are fee applications. We assume that the district court, being aware of the language of Rule 52(a) and the enormous quantity of matters before us for disposition will remand matters appealed to that court to us make detailed findings of fact only where it is necessary to assist the district court in reviewing our disposition.

*Id.* 71 B.R. at 524–25. (Citations omitted.)

█ However, the court notes that in *In re Scrap Disposal, Inc.*, 15 B.R. 296 (9th Cir. B.A.P 1981) the appellate court held the statement in Bankruptcy Rule 752 and Fed.R.Civ.P. 52(a) that findings of fact and conclusions of law are unnecessary on decisions of motions is limited to those motions decided on questions of law. *Id.* at 297. The court remanded the case for specific findings because there were alternative grounds upon which the court could have granted the motion.

Even if the trial court erred in not making specific findings of fact or articulate the basis for its conclusions that the creditors were adequately protected, reversal of the order or remanding the case for specific findings is not always required. The purpose of findings of fact by a trial court is to give an appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision. *Alpha Distrib. Co. of Cal. Inc. v. Jack Daniel Distillery*, 454 F.2d 442, 453 (9th Cir.1972). Failure to comply fully with Rule 52(a) does not require an appellate court to remand where a full understanding of the issues can be reached without the aid of findings. *Id.* at 453. See also *In re Brown*, 21 B.R. 701 (1st Cir.B.A. P.1982). ("Thus, even assuming that the court did not fully comply with Bankruptcy Rule 752(a) it is clear that the trial court concluded that estate property was, in fact, transferred." *Id.* at 703).

In the present case the record clearly indicates the basis of the trial court's ruling. There was testimony and affidavits submitted to the court concerning the value of the land which was uncontested by the creditors. The court in authorizing the use of cash collateral made an implicit determination that the equity cushion in the estate property provided adequate security to secured creditors. The bankruptcy court's order may not have complied fully with the requirements of Rule 52(a), but the court does not have to remand for findings of fact because the grounds for the trial court's actions are clear to this court. The bankruptcy court's implicit determination that the creditors were adequately protected will be reviewed on a clearly erroneous standard.

### 1. Mootness of the Order.

█ The debtor-partnership contends that this appeal is moot because at no time did Travelers seek a stay of the bankruptcy court's order authorizing use of cash collateral. It cites to an Eighth Circuit case, *Dahlquist v. First National Bank of Sioux City, Iowa*, 737 F.2d 733 (1984), where the Appellate court dismissed an appeal of a bankruptcy court's order authorizing the use of cash collateral because the funds were already spent by the debt-

or. The partnership also relies *Bankwest v. Tott,* 49 B.R. 633, 637 (D.C.S.D.1985) where the court similarly held that the issue of cash collateral is moot to the extent the amounts were already expended.

The court finds the present appeal is not moot because the debtor-partnership has already spent the authorized funds. The fact that Travelers did not request a stay of the order and that the debtor has expended the authorized money does not prevent this court from examining the merits of the appeal. In both cases cited by the debtor-partnership, the court authorized the debtor to use the money for its own benefit. Travelers correctly points out that regardless of the Appellate Court's disposition of the case, the debtors were already liable to the Creditors for the repayment of the sum used and, to the extent that such repayment did not occur from liquidation of collateral, the debtors liability for repayment was probably entitled to priority as an administrative expense under 11 U.S.C. section 507(b). *Dahlquist v. First National Bank, Sioux City, Iowa,* supra, 737 F.2d 733, 735. The instant case is distinguishable because the bankruptcy court authorized the use of cash collateral by an entity that was not a creditor of the debtor or the debtor itself. This appeal of the order authorizing the use of cash collateral is not moot.

### 2. *Hearing the Motion on Shortened Time*

Travelers contends that its due process rights were violated by the bankruptcy court allowing the motion to use cash collateral to be heard on shortened time because no genuine emergency existed. Travelers argues that the debtor knew of the tax deadline and the delay in moving the court was intentional to prevent discovery. It contends that hearings on shortened time are a form of emergency relief which endanger the due process rights of the responding party and such relief should be the exception, not the rule, and should be granted only where the party seeking it has proven that an emergency really exist and that it was not created by the design or negligence of the party seeking relief.

■ The debtor-partnership makes two arguments in support of its contention that the notice was proper. First, it argues that Travelers can not challenge the propriety of the order shortening time because they did not file an appeal of the order. This contention is meritless because an order shortening time is not a final order and therefore not appealable. 28 U.S.C. § 1292.

■ The second argument raised by the debtor-partnership is that seven days notice of a hearing to authorize use of cash collateral is adequate under the bankruptcy code. Section 363(c)(3) states that hearings to authorize use of cash collateral shall be scheduled in accordance with the needs of the debtor and the court shall act promptly on request for such hearings.

In the present case it is not possible for this court to state the bankruptcy court acted improperly in holding the hearing on shortened notice. Whether to grant or deny a hearing on shortened time because of a stated emergency is a decision within the discretion of the bankruptcy court. Rule of Bankruptcy Procedure No. 9006(c). It had a chance to examine the reasons for the order shortening time, and to question the parties and their counsel. The bankruptcy court implicitly found that a hearing to use cash collateral was necessary on shortened notice because the needs of the debtors. The bankruptcy court did not commit an abuse of discretion by holding the hearing on shortened notice. There was no violation of Travelers' due process rights by holding the hearing on seven days notice.

### 3. *Whether the Order was supported by Sufficient Evidence and for a Proper Purpose.*

Bankruptcy Code section 363 defines cash collateral and the uses allowed. Section 363(a) states:

In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposits accounts, or other cash equivalents whenever acquired in which the estate and an entity

other than the estate have an interest and includes the proceed, products, offspring, rents or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after commencement of a case under this title.

Section 363(c)(2)(B) provides that the trustee or the debtor in possession of the money may not use, sell or lease cash collateral outside the normal course of business unless the court, after notice and hearing, authorizes such use, sale or lease. The primary concern of the court in determining whether cash collateral may be used is whether the secured creditors are adequately protected. Section 363(e) provides the court shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of the creditors' interest. The burden of proof on the issue of adequate protection is on the debtor. 11 U.S.C. Section 363(o).

Travelers contends that there is insufficient evidence of adequate protection and that it is improper to use a debtor's cash collateral to pay anothers taxes.

### A. Sufficiency of Evidence of Adequate Protection.

Cash collateral can be authorize only where secured creditors are adequately protected in accordance with Bankruptcy Code section 363(e). Adequate protection is a flexible concept that requires a court to make decisions on a case-by-case basis. *In re Harrington & Richardson, Inc.*, 48 B.R. 431, 433 (Bankr.D.Mass.1985). While the term "adequate protection" is not defined in the Code, 11 U.S.C. § 361 sets forth three non-exclusive examples of what may constitute adequate protection: 1) periodic cash payments equivalent to decrease in value, 2) an additional or replacement lien on the other property, or 3) other relief that provides the indubitable equivalent. *In re Mellor*, supra, 734 F.2d 1396, 1400. Although the existence of an "equity cushion" as a method of adequate protection is not specifically mentioned in section 361, it is the classic form of protection for a secured debt justifying the restrain of lien

enforcement by a bankruptcy court. *Id.* at 1400. In fact, it has been held that the existence of an equity cushion alone can provide adequate protection. *In re San Clemente Estates*, 5 B.R. 605, 610 (Bkrtcy. S.D.Cal.1980); 2 Collier on Bankruptcy, § 361.02[3] at 361–69 (15th ed. 1979).

An "equity cushion" had been defined as the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during time the automatic stay remains in effect. *In re Roane*, 8 B.R. 997, 1000 (B.Ct.E.D.Pa.1981); *In re Mellor*, supra, 734 F.2d at 1400, fn. 2. The claims of junior lienholders are not considered in determining whether the senior lienholder is adequately protected. *La Jolla Mortgage Fund*, 18 B.R. 283, 289 (Bkrtcy.S.D.Cal.1982).

As previously stated, the bankruptcy court made an implied finding of fact that the creditors were adequately protected by the equity cushion in the estate property. A bankruptcy court's determination that a secured creditors is adequately protected is a question of fact. *In re O'Connor*, 808 F.2d 1393 (10th Cir.1987). As a question of fact, the finding of adequate protection can be reversed on appeal only if it is clearly erroneous. Bankruptcy Rule No. 8013.

The debtor-partnership's motion for authorization to use cash collateral was supported by a declarations from an appraiser, Dave Dunshee. A report that he compiled stated that the estate property was valued at approximately $2,300,000. Travelers had an opportunity to present evidence and argue that the appraised value of the estate property was incorrect. However, no other value was presented to the bankruptcy court. The bankruptcy court implied determination that the property is valued at $2,300,000 was not clearly erroneous. The security interest of Travelers in property was $1,133,905.00, approximately half of the value of the property.

Generally, if the value of a debtor's property in which the creditor has an interest is at least fifty percent greater than the value of the creditor's lien, most courts will con-

clude that the value of the property sufficiently satisfies the creditor's claim, and provides adequate protection. *In re Xinde Intl., Inc.,* 13 B.R. 212 (Bankr.D.Mass. 1981). In *In re Mellor,* supra, 734 F.2d 1396, the court found that an equity cushion of approximately 20% adequately protects the creditor's security interest. See also *In re McGowan,* 6 B.R. 241, 243 (B.Ct. E.D.Pa.1980) [holding a 10% equity cushion is sufficient to be adequate protection].

The bankruptcy court, having determined the value of the estate at $2,300,000, properly determined the creditors were adequately protected by the equity cushion. The evidence is sufficient to uphold the court's authorization of the use of cash collateral.

## B. Proper Use of Cash Collateral.

■ Travelers contends that the Bankruptcy Court improperly authorized the use of cash collateral because the effect of the authorization was a distribution of estate property to nondebtors ahead of secured creditors. It argues that a bankruptcy court can not approve the use of cash collateral for the purpose of paying the tax liability of partners of a bankrupt partnership.

The debtor-partnership has argued that the use of cash collateral is permissible under sections 363(b) and 506(c) of the bankruptcy code. After an examination of the Bankruptcy Code and the relevant authority the court holds the bankruptcy court errored in allowing the debtor to use cash collateral to pay the debts of a third party.

Plaza Family Partnership, as a debtor-in-possession of the estate, has the duty to protect and conserve property in its possession for the benefit of creditors. *In re Devers,* 759 F.2d 751 (9th Cir.1985). The exact nature of the duty owed by a debtor-in-possession of the estate was defined in *In re Morning Star Ranch Resorts,* 64 B.R. 818 (Bkrtcy.D.Colo.1986):

The debtor is a fiduciary and operates the property as a fiduciary for the parties in interest. He has obligations to operate the property in good fashion, to pay the expenses of operation and the

cost of maintenance, to preserve and protect the property, and to account for the monies received and the expenses paid. The Debtor cannot utilize the net funds remaining to pay the ordinary cost of administering the bankruptcy estate, for those are expenses that are imposed upon the debtor and not upon the secured party. Thus absent compliance with 11 U.S.C. 363(c)(2) the debtor should not be in a position to use the funds to pay the attorney for the estate, to pay for accounting services for the estate, or to pay other expenses of administration of the Chapter 11 estate unrelated to the operation, care, preservation and maintenance of the property.

64 B.R. at 822.

The debtor-partnership suggest that where there is adequate protection of the creditor's interest, a bankruptcy court can authorize the use of cash collateral for any purpose. *In re Triplett,* 87 B.R. 25 (Bankr. W.D.Tex.1988). In that case the court stated "where the debtor clearly demonstrates that the value of collateral adequately protects the interest of the secured creditor, income from the collateral—i.e. "cash collateral"—may be used by the debtor for the general benefit of the estate and need not be devoted exclusively to the protection of the creditors or the collateral." *Id.* at 27.

The debtor-partnership's reliance upon *In re Triplett* is misplaced. That case authorized the use of cash collateral for the debtor's own use. The present case is distinguishable because the bankruptcy court authorized the use of cash collateral for use by individuals other than the debtor. A partnership is not a taxpaying entity and as such, its income and tax liability is divided among the partners in proportion to each ones interest in the partnership. The tax obligation is the burden of the partners as individuals, and not the partnership. *In re Matter of Montgomery,* 532 F.2d 725, 726 (9th Cir.1976). The debtor-partnership was not paying its own expense, but that of another.

Additionally, *In re Triplett* is of arguable validity in light of authority that suggest cash collateral can be used by the debtor only where the estate, and not the debtor, receives a benefit. For example,

payment of attorney's fees from cash collateral has been denied where the services only benefit the debtor, and not the estate. *In re Rhoten,* 44 B.R. 741 (Bankr.M.D. Tenn.1984); *In re Taylor,* 66 B.R. 390 (Bankr.W.D.Pa.1986) bankrupt estate.

The Bankruptcy Appeals Board of the Ninth Circuit in *In re Walter,* 83 B.R. 14 (9th Cir. BAP 1988) recently ruled that 11 U.S.C. § 363 does not allow a debtor to use estate property for personal purpose. The court cited with approval to the Fifth Circuit case, *In re Continental Air Lines, Inc.,* 780 F.2d 1223 (5th Cir.1986) which articulated the criteria a bankruptcy court is to consider in deciding the use of estate property under 11 U.S.C. § 363(b):

> We also agree implicit within section 363(b) is the requirement of justifying the proposed transaction. *In re Lionel Corp,* 722 F.2d 1063, 1071 (2nd Cir.1983). That is, for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.... Whether the proffered business justification depends on case. As the Second Circuit held in *Lionel,* the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interest of the debtor, creditors and equity holders alike.

83 B.R. at 19–20.

Section 363 has been invoked in a variety of situations where cash collateral is necessary to keep the business going. See *In re Smith,* 24 B.R. 5 (Bkrtcy.S.D.Fla.1982); *In re Prime,* 15 B.R. 216 (Bkrtcy.W.D.Mo. 1981); *In re Arriens,* 25 B.R. 79 (Bkrtcy.D. Ore.1982). However, it is evident that cash collateral can be used by the debtor under section 363 only for a business purpose. The implicit limitation on the use of cash collateral prevents a debtor from using the funds for personal use; such as in this case paying the tax obligation of an its individual partners.

■ The debtor-partnership next attempts to justify the authorization of use of cash collateral by citing to 11 U.S.C.

§ 506(c) which states that a debtor-in-possession of the estate property may recover from the property an allowed secured claim the reasonable, necessary cost and expenses of preserving such property to the extent of any benefit of the holder of such claim. The debtor-partnership's contention is that the estate has benefited by the leasing of the land and the tax obligation of the partners is a reasonable and necessary expense of leasing the property.

Recovery of expenses under section 506(c) is subject to a number of limitations and courts will allow recovery only if the following guidelines are met:

> To recover the debtor in possession must expend the funds primarily to benefit the creditor, who must in fact directly benefit from the expenditure. Expenses undertaken to improve the position of the debtor in possession although indirectly benefiting the creditor are not recoverable. Several courts require the debtor in possession or trustee to establish a quantifiable, rather than qualitative or speculative, benefit. In sum, courts construing 506(c) appear to require the debtor-in-possession, who bears the burden of proving benefit, to show that absent the cost to expended the property would yield less to the creditor than it does as a result of the expenditure, although the provision does not expressly impose such a requirement. *Brookfield Production Credit Ass'n v. Borron,* 738 F.2d 951 (8th Cir.1984). (Citations omitted)

According to the specific language of section 506(c) and the guidelines announced in *Brookfield,* the debtor-partnership is not entitled to recovery of the tax obligation of the individual partners. The specific language of the section provides only for the recovery of expenses of maintaining or preserving expended by the trustee or the debtor-in-possession. The section is silent as to recovery of expenses incurred by individuals or entities not under the protection of Chapter 11. The tax in the present case was not an expense of the partnership as a debtor-in-possession, but of its individuals partners who are not secured creditors. Thus, tax obligation does not fit the definition of an expense of the debtor for recovery as a section 506(c) expenditure.

Additionally, the expenditure was not to benefit the creditors, but to benefit non-creditors, i.e. the individual partners of the debtor in possession. In *In re Winslow Center Associates,* 57 B.R. 317 (E.D.Pa. 1986) a partnership that filed for Chapter 11 protection requested funds to employ an accountant to prepare its tax records because its assets were fully encumbered. The partnership attempted to justify the expense as reasonable and necessary to preserve estate assets for the benefit of the creditors. The court held that section 506(c) did not apply because the preparation of the debtor's financial statement and tax forms would not benefit the secured lenders, but would simply benefit the partners of the debtor since the profits or lowest of a partnership flow through to the partners. The court stated "the burden of paying for the accountant should justifiably fall on the partners and not on the secured lenders and the Code squarely supports this conclusion." *Id.,* 57 B.R. at 318–19.

In the present case the bankruptcy court improperly authorized the use of cash collateral for a purpose personal to the debtor. Even in situations where adequate protections are available cash collateral can not be used for a nonbusiness purpose. The individual partners of the debtor are not entitled to a distribution before Travelers, a secured creditor. The effect of such a use would be to subordinate secured claims to the claims of the debtor and others. Such a result is inconsistent with the intent and purpose of the bankruptcy code.

ACCORDINGLY IT IS ORDERED that the order of the Bankruptcy Court authorizing the use of cash collateral is reversed. This court expressly holds that where an individual partner incurs tax liability as a result of income received by a bankrupted partnership, cash collateral of the Chapter 11 estate may not be used to pay the tax even though the creditor is adequately protected. The debtor-partnership is not obligated to pay the tax and the creditors will not benefit from the expenditure. Thus, it is not recoverable under section 506 as an expense to maintain the estate property. Additionally, section 363 is inapplicable because the court can find no business justification for the bankruptcy estate to pay the tax obligations of third parties. The bankruptcy court exceeded its authority in allowing the debtor to use cash collateral for the stated purpose. The order authorizing the use of cash collateral is reversed and the case remanded to the bankruptcy court for further proceedings consistent with this decision.